UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/13/2026___

WAYNE J.,[1]

                Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**OPINION AND ORDER**

25-CV-1832 (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

Plaintiff Wayne J. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under the Social Security Act. The parties consented to proceeding before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). For the reasons described below, the Commissioner's decision is **AFFIRMED** and Plaintiff's action is **DISMISSED**.

I.      **BACKGROUND**

Plaintiff applied for disability insurance benefits on October 14, 2022, claiming disability based on multiple impairments, including asthma and rhinosinusitis, lumbar disc disease, cervical disc disease, thoracic disc disease, bilateral knee osteoarthritis, neuropathy, obstructive sleep apnea, and obesity.

---

[1] To preserve his privacy, the plaintiff is referred to by his first name and the first initial of his last name.

ECF No. 8 ("AR") at 170, 180.[2]  The Social Security Administration denied

Plaintiff's claim on August 7, 2023.  *Id.* at 94–98.  His request for reconsideration of

that decision was denied on November 28, 2023.  *Id.* at 101–04.  Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"), which took place

on May 20, 2024.  *Id.* at 39–62.  At the hearing, Plaintiff was represented by counsel

and a vocational expert testified.  *Id.* at 39–62.

On June 21, 2024, the ALJ issued a decision finding Plaintiff not disabled

within the meaning of the Social Security Act, ruling that Plaintiff's medically

determinable impairments did not preclude all substantial gainful work over a

period of at least 12 months.  *Id.* at 7–33.  More specifically, the ALJ reached the

following conclusions:

- The claimant has not engaged in substantial gainful activity since May 31, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

- The claimant has the following severe impairments: asthma; rhinosinusitis; rhinitis; reactive airway disease; lumbar spine degenerative disc disease; cervical spine degenerative disc disease; thoracic spine degenerative disc disease; bilateral knee osteoarthritis and chondromalacia patella; diabetes mellitus, type 2; obstructive sleep apnea; neuropathy; obesity (20 CFR 404.1520(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 303, Subpart P, Appendix 1 (20 CFR 202.1520(d), 404.1525 and 404.1526).

- After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can

---

[2] Citations to the Administrative Record are to the page numbers stamped at the bottom right of each page.

occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can frequently balance. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. The claimant cannot work at unprotected heights or with dangerous machinery. The claimant cannot operate motor vehicles.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565).

- Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a and 404.1568(d)).

- The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2019, through the date of this decision (20 CFR 404.1520(g)).

AR at 12–28. The SSA's Appeal Council denied Plaintiff's request for review on January 3, 2025, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–6. Plaintiff then sought review in this Court by commencing this action on March 4, 2025. ECF No. 1.

## II.    LEGAL STANDARDS

### A.    Standards Governing Agency Evaluation of Disability Claims

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which

3

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

An ALJ must proceed through a five-step analysis to make a disability determination. *See* 20 C.F.R. § 404.1520. A claimant bears the burden of proof as to steps one through four; the Commissioner bears the burden as to step five. *Selian* 708 F.3d at 418. "The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step." *Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-580, 2019 WL 1331399, at *2 (S.D.N.Y. Mar. 15, 2019).

First, the claimant must prove he is not currently engaged in substantial gainful activity. Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the Listings. Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.

If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove—considering claimant's residual functional capacity ("RFC"), age, education, and past work experience—that the claimant is capable of performing other work. If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.

**B.    Standards Governing Agency Evaluation of Medical Opinion Evidence**

In January 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff applied for benefits in 2022, these regulations apply here.

Under the new regulations, the ALJ considers all medical opinions and evaluates their persuasiveness based on their supportability, consistency, relationship with claimant, specialization, and other factors. *See id.* § 404.1520c(a)–(c). An ALJ is required to "articulate how [they] considered the medical opinions" and state "how persuasive" the medical opinions are determined to be, with a specific explanation of the supportability and consistency factors. *See id.* § 404.1520c(a)–(b); *see Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion . . . .") (emphasis in original), *adopted sub nom. by Vellone ex. rel. Vellone v. Saul*, 2021 WL 2801138 (July 6, 2021).

"Supportability refers to the extent to which a medical source opinion is supported by objective medical evidence and the medical source's explanations." 20 C.F.R. § 404.1520c(c)(1). Put simply, "[s]upportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Vellone*, 2021 WL 319354, at *6.

Consistency, meanwhile, "refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources." 20 C.F.R. § 404.1520c(c)(2). "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone*, 2021 WL 319354, at *6 (cleaned up). An ALJ's analysis of the consistency factor is insufficient when the assessment "ignores or mischaracterized medical evidence or cherry-picks evidence that supports [the ALJ's] RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing *Velasquez v. Kijakazi*, No. 19-CV-9303, 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021)).

### C.    Standards Governing Judicial Review of Agency Decision

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (cleaned up). When "the ALJ has applied an improper legal standard," or when there is not substantial evidence to support the ALJ's determination, the reviewing court may remand to the ALJ. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir.

1995); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (cleaned up)).

Thus, if sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (cleaned up)). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded to the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (cleaned up).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (cleaned up). Courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not determine whether the ALJ applied the correct legal principles in assessing plaintiff's eligibility for disability benefits); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration). A court may not defer to an ALJ's determination that is the product of legal error,

including a failure to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." *Cullen v. Kijakazi*, No. 23-CV-1960, 2024 WL 564501, at *2 (S.D.N.Y. Feb. 9, 2024) (quoting 42 U.S.C. § 405(b)(1)), *adopted by* 2024 WL 1158455 (Mar. 18, 2024).

## III.   DISCUSSION

Plaintiff seeks remand on three grounds: (1) the ALJ failed to properly consider the medical opinion evidence, (2) Plaintiff's past work did not provide the transferable skills needed for the available work identified by the vocational expert, and (3) the ALJ applied the wrong regulation defining "past relevant work." Each argument is addressed below.

### A.   Medical Opinion Evidence

Plaintiff's first argument is that the ALJ did not properly consider the medical opinion evidence in concluding that Plaintiff retains the functional capacity to perform sedentary work. ECF No. 11 at 14–20. As discussed below, the ALJ applied the correct legal standards to evaluate medical opinion evidence, *see supra* Section II.B., and his decision is supported by substantial evidence.

Plaintiff asserts that the ALJ improperly discounted the medical opinions of Dr. Weiner, Dr. Krishna, and Dr. Baynes. *See* ECF No. 11 at 19 ("The ALJ was not at liberty to discount a treating physician's opinion based on his own formulation of the record."). Plaintiff visited these three doctors at the direction of his counsel, AR at 49, and they opined that Plaintiff's functional limitations precluded sedentary work. Plaintiff's opening brief describes their opinions at length, *see* ECF No. 11 at

7–13, 16–18, and argues that they "are well supported by reference to their own clinical findings and objective MRI and EMG testing." *Id.* at 18.

While Plaintiff describes the legal standards an ALJ must apply in weighing medical opinions, *id.* at 15–16, he never explains how the ALJ failed to adhere to these standards in assessing the opinions offered by Drs. Weiner, Krishna, Baynes. A review of the ALJ's decision shows that he found Dr. Baynes's opinion unpersuasive because it was not supported by Plaintiff's treatment reports from Crystal Run Healthcare or Dr. Baynes's own observations during physical examinations of Plaintiff. AR at 23. Further, the ALJ found that Dr. Baynes's opinion was inconsistent with the opinions of Dr. Puri, Dr. Siddiqui, and Dr. Auerbach.[3] *Id.* The ALJ also found Dr. Krishna's opinion unpersuasive because it was unsupported by her own treatment reports and was inconsistent with Plaintiff's treatment reports from Crystal Run Healthcare and the opinions of Dr. Puri, Dr. Siddiqui, and Dr. Auerbach. *Id.* at 24. Additionally, the ALJ found Dr. Weiner's opinion unpersuasive because it was unsupported by his own treatment reports and Plaintiff's treatment reports from Crystal Run Healthcare, and was inconsistent with the opinions of Dr. Puri, Dr. Siddiqui, and Dr. Auerbach. *Id.* Plaintiff does not address this analysis of the medical opinion evidence and thus fails to demonstrate

---

[3] While the ALJ refers to a "Dr. Abueg" in portions of his decision, there is no doctor by that name in the medical records. The ALJ appears to be referring to Dr. Auerbach by a mistaken name, as the citations to the underlying medical records refer to the records and opinions of Dr. Auerbach. *See, e.g.*, AR at 23 (citing Exhibit 4A, the Disability Determination Explanation completed by Dr. A. Auerbach, at AR 73–80).

that it did not comport with the governing regulations or that it was otherwise erroneous.

While he was not swayed by Drs. Weiner, Krishna and Baynes, the ALJ found Dr. Puri's opinion to be persuasive because it was supported by that doctor's examination of Plaintiff and was consistent with Plaintiff's treatment reports and the state agency consultants' opinions. *Id.* at 22. Additionally, the ALJ found Dr. Siddiqui's opinion persuasive because it was supported by the consultative examination findings and treatment reports he reviewed and was consistent with other medical opinions in the record, including Dr. Puri's opinion and the DDS consultant on reconsideration. *Id.* Finally, the ALJ found Dr. Auerbach's opinion partially persuasive because it was supported by the medical records and other medical opinions and was consistent with the opinions of Dr. Puri and Dr. Siddiqui. *Id.* at 22–23.

In assessing these medical opinions, the ALJ applied the governing legal standards, which require an explanation of supportability and consistency. *See* Section II.B above. Once the ALJ properly assesses each medical opinion, he is free to weigh that evidence as he sees fit so long as his conclusion is supported by substantial evidence. *See Schillo v. Kijakazi*, 31 F.4th 64 (2d Cir. 2022) ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). "Even where the

10

administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (cleaned up).

Without addressing the opinions provided by Drs. Siddiqui and Auerbach, Plaintiff attacks Dr. Puri's opinion as unsupported because she "did not review the MRIs of the cervical or lumbar spine or the EMG testing confirming 1.5 radiculopathy." ECF No. 11 at 18. Citing *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), and cases following it, Plaintiff contends that the ALJ erred because he relied on an incomplete consultative examination. ECF No. 11 at 18–19.

In *Burgess*, the Second Circuit found that the Commissioner's decision was unsupported by substantial evidence because the ALJ "repeatedly stated that there was no 'objective' evidence to support Burgess's claim," despite the existence of a MRI Report in the record, which constituted objective evidence. 537 F.3d at 131. Here, in contrast, the ALJ expressly referenced the imaging and examination findings in the medical record, including MRI scans of Plaintiff's spine. *See* AR at 19–20, 26. Indeed, the ALJ did what *Burgess* required on remand: he gave "express consideration" of the MRI scans in Plaintiff's medical records.

Plaintiff also cites *Scott v. Commissioner of Social Security*, where the court remanded because the only medical opinion supporting the RFC determination was based on an incomplete record. No. 16-CV-3261, 2017 WL 1458773, at *2 (S.D.N.Y. Apr. 24, 2017). The court directed the Commissioner to ensure on remand that the ALJ "either order an additional consultative examination that takes into

11

consideration Scott's spinal imaging or seek additional information from a treating physician about the extent of Scott's limitations." *Id.* at \*3. Here, there were multiple medical opinions assessing Plaintiff's limitations, including the opinions of Drs. Siddiqui and Auerbach. These opinions, which the ALJ credited in reaching his conclusion, were based on a review of all of Plaintiff's medical records, *see* AR at 23, which distinguishes this case from *Scott*.

Thus, this is not a case in which the ALJ relied on an incomplete record or failed to consider certain evidence in the record. As described above, the ALJ considered the persuasiveness of all of the medical opinions in the record, along with the objective medical evidence and Plaintiff's own testimony, to reach his RFC determination. Thus, even if one medical expert's opinion was based on an incomplete record, the ALJ considered that opinion with other evidence in the record to form a full picture from which the ALJ could determine Plaintiff's limitations. *See Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017) ("[T]hat Dr. Wassef's . . . review did not include the Plaintiff's MRI results do[es] not preclude the ALJ from assigning Dr. Wassef's opinion significant weight, especially in light of the other evidence in the record.") (summary order).

The ALJ's determination that Plaintiff retained the ability to perform a range of sedentary work was supported by substantial evidence. Specifically, the ALJ based his decision on the medical opinions of Dr. Puri, Dr. Siddiqui, and Dr. Auerbach, the medical records from Plaintiff's regular medical visits, Plaintiff's regular activities such as regular driving and daily walking, Plaintiff's lack of

12

treatment beyond home exercises, Plaintiff's repeated rejection of prescription medications or acupuncture, and that Plaintiff's conditions predated his retirement. *See* AR at 22–27.  Plaintiff does not directly address most of this evidence.  That Plaintiff can point to other evidence in the record that could support a different conclusion does not undermine the substantial evidence that supports the ALJ's RFC determination.

### B.    Transferable Skills

Next, Plaintiff challenges the ALJ's determination that there were jobs available in the national economy that Plaintiff could perform at the sedentary exertional level.  ECF No. 11 at 20–22.  In reaching this conclusion, the ALJ considered Plaintiff's RFC, age, education, work experience, and the vocational expert's testimony to conclude that Plaintiff, who had worked for many years as a police sergeant, could work in sedentary occupations such as police clerk, police aide, and dispatcher.  AR at 27–28.  The ALJ found that Plaintiff had the following work skills from his past relevant work:  interviewing others, note taking, report writing, data entry, collecting and analyzing data, recording evidence, and knowledge of court proceedings, police terminology, and police procedures.  *Id.* at 27.

Plaintiff argues that the sedentary positions identified by the vocational expert "require more skills than [Plaintiff] employed [in] his work as a police sergeant."  ECF No. 11 at 20.  But Plaintiff never denies that he has the skills specifically identified by the ALJ, nor does he make any showing that he would not be able to use these skills in the sedentary occupations identified by the vocational

13

expert.  Further, Plaintiff never identifies any particular skill he lacks but that would be required for these jobs.

Instead, Plaintiff constructs an argument that uses the Dictionary of Occupational Titles ("DOT") occupational codes as a proxy for job skills.[4]  As Plaintiffs explains, the middle three digits of a DOT occupational code identify the "data, people, and things" classification for each position, with a lower number indicating more complex responsibility and judgment and a higher number indicating less complicated functions.  *Id.* at 20–21.

The middle three digits of the occupational code for Plaintiff's prior position as a police sergeant are "133."  *Id.* at 21.  The middle three digits of the occupational codes for the positions identified by the vocational expert are "362."  *Id.*  Focusing on the last of these three digits, Plaintiff argues that classification level "2" indicates a higher level of complexity than the "3" included in occupational code for a police sergeant.  *Id.*  Plaintiff claims this analysis of DOT codes "plainly demonstrates" that there was no basis for the vocational expert to conclude that Plaintiff "in fact acquired the requisite skills needed for these alternate three jobs."  ECF No. 11 at 21.

Plaintiff cites *Draegert v. Barnhart* for the proposition that the ALJ must cite specific transferable skills and the specific occupations to which those skills are transferable in his decision.  311 F.3d 468 (2d Cir. 2002).  But *Draegert* does not

---

[4] The DOT does not use the word "skills" to refer to these classifications.  Rather, the "data, people, and things" classifications describe the worker's functional relationship to each of these three categories and are not occupationally specific.  DOT, Parts of the Occupational Definition, 1991 WL 645965.

support use of DOT's data, people, and things classifications for this purpose, and Plaintiff does not attempt to correlate the data, people, and things classifications to particular work skills.  The ALJ expressly listed the skills Plaintiff acquired from his past work, AR at 27, and specifically identified the occupations to which those skills are transferable, *id.* at 28.  Thus, *Draegert* is inapposite.

Finally, Plaintiff's mechanical application of the DOT occupational codes yields absurd results.  For example, the data, people, and things classification for a police captain is "167."  According to Plaintiff's logic, someone promoted to become a police captain would lack ability as to data, people, and things required to perform the work of a police sergeant, which occupational code has "133" as its middle digits. This conclusion is at odds with the reality of the job market, where the usual expectation is that one would need to master the job of police sergeant before being promoted to police captain.  Thus, Plaintiff's analysis of DOT occupational codes is unpersuasive and does not undermine the ALJ's conclusion.

The ALJ reasonably relied on the vocational expert's testimony in the context of Plaintiff's age, education, work experience, and RFC, to reach the conclusion, supported by substantial evidence, that Plaintiff could perform other occupations with jobs existing in significant numbers in the national economy.

### C.    Definition of Past Relevant Work

Finally, Plaintiff seeks remand based on the newly adopted regulatory definition of "past relevant work."  ECF No. 11 at 22–24.  Plaintiff argues that the ALJ should have applied the new definition of past relevant work, which became

effective on June 22, 2024, because, although the ALJ's decision was dated June 21, 2024, it was not mailed until June 25, 2024.  *Id.* at 23.

Before June 22, 2024, "past relevant work" was defined as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1) (2022).  The new definition of "past relevant work" changed the phrase "past 15 years" to "past 5 years."  20 C.F.R. § 404.1560(b)(1) (2024).  As described in the Social Security Administration's Federal Register announcement regarding the effective date of the new final rule, "[w]e will apply the final rule and all procedures set forth therein, as previously described in the originally published final rule, to all claims newly filed and pending beginning on June 22, 2024."  89 Fed. Reg. 48138-01.

To the extent Plaintiff seeks retroactive application of the new definition of "past relevant work," this argument is rejected.  "Retroactivity is not favored in the law."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  "Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Id.*  Nothing in the revised version of the regulation requires its application to cases that were decided before the regulation became effective.  The applicable version of the regulation is therefore the one in effect at the time of the ALJ's decision.  *See Tina W. v. Commissioner*, No. 24-CV-4029, 2024 WL 5165687 (10th Cir. 2024) (declining to retroactively apply the new definition of "past relevant work").

16

To the extent Plaintiff contends that the ALJ's decision was actually issued *after* June 21, 2024, this argument, too, is rejected.  To start, Plaintiff cites no authority for disregarding the date listed in the decision itself.  While Plaintiff speculates that "the ALJ issued his decision <u>after</u> June 21, 2024," he offers no support for this assertion beyond the fact that it was postmarked on June 25, 2024. ECF No. 11 at 23 (emphasis in original).  Given that June 21, 2024 was a Friday, two days after a federal holiday, there are far more plausible explanations for a later postmark date (*e.g.*, ordinary administrative delays) than Plaintiff's unsubstantiated suggestion that the ALJ's decision was backdated.

The Court therefore rejects Plaintiff's argument and finds that the ALJ did not commit legal error in applying the then-applicable regulations to reach his June 21, 2024 decision.

## IV.    CONCLUSION

For the reasons described above, the Commissioner's decision is **AFFIRMED** and this action is **DISMISSED**.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: March 13, 2026
      New York, New York

                            Henry J. Ricardo
                            United States Magistrate Judge